## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### CHARLESTON DIVISION

UNITED STATES OF AMERICA,

v.                                                    CRIMINAL ACTION NO. 2:18-cr-00057

BRYAN LEE OGLE,

### MEMORANUDM OPINION AND EXPLANATION OF REASONS

On January 28, 2021, Defendant Bryan Lee Ogle appeared before me to be sentenced. At that hearing there were a number of objections. I sentenced Mr. Ogle to 210 months of imprisonment to be followed by 5 years of supervised release. I write now to preserve my reasoning on those objections and the sentence for the record.

Mr. Ogle was charged with being a felon in possession of a firearm after he fled from approaching police officers, drove at speeds over 100 miles per hour, crashed his car, fled on foot, only to be tackled when officers believed he was retrieving a firearm. Once subdued, Mr. Ogle was found to be in possession of a firearm. Days later, after being taken to a hospital, Mr. Ogle again attempted to flee, leading to him disarming a law enforcement officer and firing the weapon. The bullet was deflected by an officer's belt. Mr. Ogle plead guilty to attempted murder in state court for shooting at the police officer and was sentenced to 6-30 years. I am sentencing Mr. Ogle for his possession of a firearm when he fled from police the first time.

## I.   Defendant's Objections to the Presentence Investigation Report

After Defendant plead guilty to being a felon in possession of a firearm in violation of 18 U.S.C. 922(g)(1) and 924(a)(2), I ordered the United States Probation Office to prepare a presentence investigation report. [ECF No. 49].

At the hearing, three objections to the report remained. First, Defendant objected to the application of the 4-level enhancement for the possession of a firearm in connection with another felony offense under U.S.S.G. § 2K2.1(b)(6)(B). Second, Defendant objected to the inclusion of certain state charges in the calculation of his criminal history points. Third, Defendant objected to the Probation Officer's determination that the Armed Career Criminal Act applied to his sentence.

### a. Possessing a Firearm in Connection with Another Felony Enhancement Objection

In the calculation of Mr. Ogle's offense level for the presentence investigation report, Defendant objected to the application of a 4-level enhancement under U.S.S.G. § 2K2.1(b)(6)(B). Section 2K2.1 determines the offense level for a defendant convicted of the unlawful receipt, possession, or transportation of firearms or ammunition. Section 2K2.1(b)(6)(B) provides that "if the defendant used or possessed any firearm or ammunition in connection with another felony offense; or possessed or transferred any firearm or ammunition with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense, increase [the offense level] by 4 levels. If the resulting offense level is less than level 18, increase [the offense level] to level 18."

2

Application Note 14 of § 2K2.1(b)(6) provides several definitions that are helpful in applying this subsection. First it notes that this subsection should "apply if the firearm or ammunition facilitated, or had the potential of facilitating, another felony offense." U.S.S.G. § 2K2.1, cmt. n.14(A). "Another felony offense" is defined as "any federal, state, or local offense, other than the . . . firearms possession or trafficking offense, punishable by imprisonment for a term exceeding one year, regardless of whether a criminal charge was brought, or a conviction obtained." § 2K2.1, cmt. n.14(C).

In determining whether the other felony offense should be considered under U.S.S.G § 2K2.1(b)(6)B, that other felony offense must be relevant conduct to the offense of conviction. § 2K2.1, n.14(E); *see also United States v. Hussey*, No. 2:18-CR-13, 2018 WL 3300244 (E.D. Tenn. July 3, 2018) ("the four-level enhancement for use of a firearm or ammunition in connection with another felony offense pursuant to U.S.S.G. § 2K2.1(b)(6)(B), only appl[ies] as "relevant conduct" if the [other felony offense is] "part of the same course of conduct or common scheme or plan as the offense of conviction."). The Fourth Circuit Court of Appeals has held that the requirements for this enhancement are satisfied "when a firearm has some purpose or effect with respect to the other offense, including cases where a firearm is present for protection or to embolden the actor." *United States v. Bolden*, 964 F.3d 283, 287 (4th Cir. 2020).

Here, the other felony offense involves Defendant's first attempt to flee from law enforcement. On February 8th, 2018, a police officer pulled over Defendant and exited his car to initiate conversation with Defendant. While the officer was

approaching Defendant's car, Defendant fled in his vehicle. A chase ensued involving multiple police vehicles, with Defendant travelling at speeds greater than 100 miles per hour. After eventually crashing his car, Defendant fled on foot despite officers' commands to surrender himself. After being chased, according to witness testimony at the sentencing hearing, Mr. Ogle reached for a firearm and pulled it out[1] before being tackled by law enforcement officers and ultimately arrested.

Under West Virginia law, a "person who intentionally flees or attempts to flee in a vehicle from a law-enforcement officer . . . acting in his or her official capacity after the officer has given a clear visual or audible signal directing that person to stop, and who operates the vehicle in a manner showing a reckless indifference to the safety of others, is guilty of a felony and, upon conviction thereof, shall be fined not less than $1,000 nor more than $2,000 and shall be imprisoned in a state correctional facility not less than one nor more than five years." W. Va. Code § 61-5-17(f). Further, a "person who intentionally disarms or attempts to disarm a law-enforcement officer . . . acting in his or her official capacity is guilty of a felony and, upon conviction thereof, shall be imprisoned in a state correctional facility not less than one nor more than five years." W. Va. Code § 61-5-17.

Here, the firearm was not merely present during Defendant's felonious flight from law enforcement. The possession of the firearm, which prompted his flight, also emboldened his flight and in his later violent resistance to law enforcement. Because it is not required that Defendant be charged or convicted of these other felony

---

[1] Defendant disputes that the firearm was ever removed from its holster.

4

offenses, and because they were clearly relevant conduct to his unlawful possession of a firearm, I found that the 4-Level enhancement was properly applied in the pre-sentence investigation report. This increased the offense level from 24 to 28.

However, because I ultimately found that the Armed Career Criminal designation applied to Defendant, this objection is mooted because the offense Armed Career Criminal Designation raises the total offense level beyond 28 to 33.

### b. Criminal History Objection

Defendant's second objection is that certain state offenses should not be included in his criminal history calculation. In the presentence investigation report, the Probation Officer noted that on February 10, 2018, two days after Defendant's encounter with the police that resulted in the instant offense, Defendant was charged with escape, malicious assault, assault during the commission of a felony, disarming and attempt to disarm a law enforcement officer, attempted murder, wanton endangerment, and possession of a firearm by a prohibited person in Kanawha County Circuit Court. [ECF No. 49, at 18]. This all occurred after Defendant was taken to the hospital, tried to escape, and ultimately fired a gun that he wrestled away from one law enforcement officer at another law enforcement officer. These charges were resolved when Defendant plead guilty to attempted murder two years later. When the presentence investigation report was authored, sentencing on these charges was still pending, but Defendant was ultimately sentenced to 6-30 years in prison on these charges.

Defendant argues that this sentence should not be considered as part of Defendant's criminal history because it "does not meet the definition of a prior

5

sentence as defined by U.S.S.G. § 4A1.2(a)." However, while these charges and a summary of the conduct were included in the presentence investigation report, this conviction did not ultimately count toward Defendant's criminal history points and, ultimately, had no effect on the Defendant's criminal history category.

U.S.S.G. § 4A1.1 provides the instructions for counting criminal history points. 3 points are added for "each prior sentence of imprisonment exceeding one year and one month." § 4A1.1(a). 2 points are added "for each prior sentence of imprisonment of at least sixty days not counted in (a)." § 4A1.1(b). And, finally, one point is added "for each prior sentence not counted in (a) or (b), up to a total of 4 points." § 4A1.1(c).

Defendant has 5 convictions that would have been counted under § 4A1.1(c): 1) Defendant plead guilty to driving under the influence, implied consent, and simple possession in 2007 [ECF No. 49, at 10]; 2) Defendant plead guilty to driving under the influence and implied consent in 2013 [ECF No. 49, at 13]; 3) Defendant plead guilty to two counts of assault in 2015 [ECF No. 49, at 15]; 4) Defendant plead guilty to aggravated assault and driving on a revoked license [ECF No. 49, at 17]; and 5) Defendant's conviction for attempted murder in 2018. But, because only 4 points can be ascribed to Defendant under § 4A1.1(c), the fifth conviction was not counted toward his criminal history point total. [ECF No. 49, at 18, 31–32]. Because it was not counted toward the total criminal history points, I found that Defendant's objection to the inclusion of this conviction in the presentence investigation report was moot and denied it as such.

### c. Armed Career Criminal Act Objection

Finally, Defendant objected to his designation as an armed career criminal. Specifically, Defendant argued that his conviction for Tennessee aggravated assault should not be considered a violent felony under the Armed Career Criminal Act and that this enhancement was incorrectly applied. Defendant conceded that he has two prior convictions that satisfy the requirements of the Armed Career Criminal Act and only objected to this conviction for Tennessee aggravated assault.

The Armed Career Criminal Act provides that "in the case of a person who violates section 922(g) of this title," as Defendant has here, "and has three previous convictions by any court referred to in section 922(g)(1) of this title for a violent felony or a serious drug offense, or both, committed on occasions different from one another, such person shall be fined under this title and imprisoned not less than fifteen years . . . ." 18 U.S.C. § 924(e). The Act goes on to define "violent felony" as "any crime punishable by imprisonment for a term exceeding one year . . . that (i) has as an element the use, attempted use, or threatened use of physical force against the person of another [("the force clause")]; or (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another [("the enumerated clause")]." § 922(e)(2)(B). However, determining whether a previous conviction qualifies as a violent felony is not always a simple task.

After identifying the statute that the criminal conviction was obtained under, I must determine if that statute is divisible or indivisible. *United States v. Allred*, 942 F.3d 641, 647 (4th Cir. 2019). An indivisible statute is one that contains a single

7

set of elements defining a single crime and calls for me to apply the categorical approach. The categorical approach calls for me to review "the most innocent conduct" that the statute in question criminalizes and compare the elements of the offense to the Armed Career Criminal Act's definition of a violent felony. *United States v. Middleton*, 883 F.3d 485 (4th Cir. 2018). The conduct that actually led to the conviction is of no consequence in this analysis.

On the other hand, if the statute is divisible, then I apply the modified categorical approach. A statute is divisible when it "sets forth alternative elements and in doing so effectively creates multiple 'distinct crimes.'" *Allred*, 942 F.3d at 649 (quoting *United States v. Gardner*, 823 F.3d793, 802 (4th Cir. 2016)). "When a criminal statute is phrased disjunctively it serves as a signal that it may well be divisible." *Id.*

In a divisible statute, there will be versions of the crime that do meet the definition of a violent felony under the Armed Career Criminal Act and other versions that do not. For a conviction under a divisible statute to be considered as a conviction of a violent felony, the prosecutor "charging a violation of a divisible statute must generally select the relevant element from its list of alternatives." *Descamps v. United States*, 579 U.S. 254, 257 (2013)). Once a statute is found to be divisible, the sentencing judge may "consult a limited class of documents, such as indictments and jury instructions, to determine which alternative formed the basis of the defendant's prior convictions." *Descamps*, 579 U.S. at 257. If there was a guilty plea, then that may be consulted as well. *Id.* at 262. However, as with the categorical approach, the actual offense conduct is irrelevant to this analysis.

8

At that point, I consider the most innocent conduct criminalized by the version of the statute that the defendant was convicted under and compare the elements of the offense to the Armed Career Criminal Act's definition of a violent felony.

When determining whether the elements of the offense meet the requirements of the Armed Career Criminal Act's definition of a violent felony, it must either meet the requirements of the force clause in subsection (i) which requires that there is an element of the "use, attempted use, or threatened use of physical against the person of another;" or it must be one of the enumerated crimes in subsection (ii) which are "burglary, arson, or extortion." The remainder of the statute, known as the residual clause, was found to be unconstitutionally vague by the United States Supreme Court. *Johnson v. United States*, S. Ct. 2551, 2557–60 (2015). Because aggravated assault is not one of the enumerated offenses under subsection (ii), the question will be whether it satisfies the force clause in subsection (i).

To satisfy the force clause, the statute must first require a mens rea greater than recklessness. *Middleton*, 883 F.3d at 498; *United States v. Hodge*, 902 F.3d 420 (4th Cir. 2018). "Force" is not defined in the Armed Career Criminal Act, but the Supreme Court has given it its plain meaning, i.e., "force exerted by and through concrete bodies" as opposed to "intellectual force or emotional force." *Johnson v. United States*, 559 U.S. 133, 138 (2010). The force must be "capable of causing physical pain or injury to another person." *United States v. Reid*, 861 F.3d 523, 527 (4th Cir. 2017) (quoting *Johnson*, 559 U.S. at 140). "De minimus physical force, such as mere offensive touching, is insufficient to trigger the [Armed Career Criminal Act's] force clause because it is not violent." *Middleton*, 883 F.3d at 489.

9

The first step is to determine whether the Tennessee statute for aggravated assault that Defendant was convicted under is divisible or indivisible. At the time of his conviction, the Tennessee statute for aggravated assault was codified as:

(a)(1) A person commits aggravated assault who:
    (A) Intentionally or knowingly commits an assault as defined in § 39-13-101, and the assault:
        (i) Results in serious bodily injury to another;
        (ii) Results in the death of another;
        (iii) Involved the use or display of a deadly weapon; or
        (iv) involved strangulation or attempted strangulation; or
    (B) Recklessly commits an assault as defined in § 39-13-101(a)(1), and the assault:
        (i) Results in serious bodily injury to another;
        (ii) Results in the death of another; or
        (iii) Involved the use or display of a deadly weapon.

Tenn. Code Ann. § 39-13-102 (2017).

Section 39-13-101 defines an assault ("Tennessee simple assault") as:
    (a) A person commits assault who:
    (1) Intentionally, knowingly, or recklessly causes bodily injury to another;
    (2) Intentionally or knowingly causes another to reasonably fear imminent bodily injury; or
    (3) Intentionally or knowingly causes physical contact with another and a reasonable person would regard the contact as extremely offensive or provocative.

The Supreme Court of Tennessee has clarified that a conviction for aggravated assault under § 39-13-102(a)(1)(A) requires not just a showing that a deadly weapon was used or displayed and that caused a person to cause reasonable bodily harm, but that the defendant intentionally or knowingly used or displayed a deadly weapon to put a person in fear of bodily harm. *Hughes v. Metropolitan Government of Nashville and Davidson County*, 340 S.W.3d 352, 370 (Tenn. 2011) (citing *State v. Wilson*, 924 S.W.2d 648, 650–51 (Tenn. 1996)).

10

The Tennessee aggravated assault statute has been examined under the Armed Career Criminal Act by two courts of appeals. The United States Court of Appeals for the Sixth Circuit considered it in *Hollom v. United States*, 736 F. App'x 96 (6th Cir. 2018). In *Hollom*, the court was considering Tennessee aggravated assault under the context of being a crime of violence in the United States Sentencing Guidelines, but the test applied is the same as determining whether it is a violent felony under the Armed Career Criminal Act. *Id.* at 98 (citing *United States v. Gibbs,* 626 F. 3d 344, 352 n.6 (6th Cir. 2010)).

The Sixth Circuit found that a conviction of Tennessee aggravated assault requires three elements "(1) mens rea; (2) commission of an assault as defined in 39-13-101; and (3)(a) serious bodily injury or (b) use or display of a deadly weapon." *Id.* at 99 (citing *State v. Hammonds*, 30 S.W.3d 294, 298 (Tenn. 2000)). The Tennessee court found that the third element, which can be met by either causing serious bodily injury or by the use or display of a deadly weapon is divisible. It then went on to find that the second element, commission of a simple assault is not itself divisible because it is merely the means by which the aggravated assault is committed. *Hollom v. United States*, 736 F. App'x 96, 100 (2018).

The Sixth Circuit analyzed whether the intentional display of a deadly weapon that causes physical contact with another, and where a reasonable person would regard the contact as extremely offensive or provocative, would satisfy the force clause of the Armed Career Criminal Act. *Id.* Recognizing that a conviction could be obtained under the simple assault statute that only required offensive or provocative touching, the court held that a conviction for aggravated assault could be obtained

11

that involved only the offensive or provocative touching. But only one element of the offense needs to require the use or threatened use of force, 18 U.S.C. § 924(e), and a conviction would require a showing of serious bodily harm or the use or display of a deadly weapon *in addition* to the offensive or provocative touching.

The Ninth Circuit Court of Appeals addressed whether the "display of a deadly weapon" required by the Tennessee aggravated assault statute satisfies the force clause. "Regardless of whether the deadly weapon itself touches the victim's body, we cannot imagine one using or displaying a deadly weapon in the course of an offensive touching without threatening the use of violent force." *Id.* at 101 (quoting *Perez-Silvan*, 861 F.3d at 942–43). When offensive or provocative touching is "coupled with the use or display of a deadly weapon, includes an implied threat of force sufficient to constitute a crime of violence[.]" *Hollom*, at 101.

First, like the Sixth and Ninth Circuits, I find that the Tennessee aggravated assault statute is divisible. This statute obviously presents different versions of the crime that a conviction could be obtained under. A defendant could be convicted for (1) intentionally or knowingly committing a simple assault that causes serious bodily injury to another; (2) intentionally or knowingly committing a simple assault that results in the death of another; (3) intentionally or knowingly committing a simple assault that involved the use or display of a deadly weapon; or (4) intentionally or knowingly committing a simple assault that involved strangulation or attempted strangulation. I agree with the Sixth and Ninth Circuits and the Supreme Court of Tennessee in finding that the statute is divisible.

12

Having found that the statute is divisible, I consulted a limited set of documents to determine which version of the statute that Defendant was convicted under. The information filed against Defendant in Tennessee state court charged him with "causing [a law enforcement officer] to reasonably fear imminent bodily injury through the use of a deadly weapon, to-wit: striking his patrol cruiser with another motor vehicle in violation of T.C.A. 39-13-102." [ECF No. 40-1, 1]. It is clear that Defendant was convicted under Tennessee Code § 39-13-102(a)(1)(A)(iii): "Intentionally or knowingly [committing] a [simple assault], and the assault involved the use or display of a deadly weapon."

Having determined what version of the aggravated assault statute the defendant was prosecuted under, I now consider the most innocent conduct criminalized under that version of the statute and determine if it meets the requirements of the force clause. Like the Sixth and Ninth Circuits before me, I must determine whether the intentional display of a deadly weapon that causes physical contact with another and a reasonable person would regard the contact as extremely offensive or provocative satisfies the requirements of the force clause of the Armed Career Criminal Act. That is, does this version of the statute have "as an element the use, attempted use, or threatened use of physical force against the person of another." 18 U.S.C. § 924(e)(2)(B)(i).

I agree with the Sixth and Ninth Circuits here. To find that the intentional display of a deadly weapon during the commission of a simple assault was not violent would require ignoring the fact that the force clause may be satisfied by "threatened

use of physical force" as opposed to the application or attempted application of that force.

Defendant also contended that this conviction could not satisfy the force clause because the elements of a simple assault can be satisfied with a mens rea of recklessness as opposed to intentionally or knowingly acting. As Defendant notes, the Fourth Circuit requires that a statute which permits a conviction with a mens rea of reckless cannot qualify as a violent felony under the Armed Career Criminal Act. *Middleton*, 883 F.3d at 498. However, after applying the modified categorical approach, I know that Defendant's conviction under Tennessee Code § 39-13-102(A)(1)(A)(iii) required proof of a mens rea of intentionally or knowingly. Therefore, Defendant's argument about the mens rea requirement fails.

Having found that this conviction meets the requirements of the Armed Career Criminal Act, I overruled Defendant's objection on this matter. Section 4B1.4 of the United States Sentencing Guidelines governs the offense level of Armed Career Criminals. Because Defendant did not use or possess a firearm during the commission of the three predicate offenses, Defendant's offense level is increased to 33. This increase moots the 4-level increase under § 2K2.1(b)(6)(B) because that increase only increased the offense level to 28 and I am required to use the greater of these two numbers. *See* U.S.S.G. § 4B1.4(b).

After decreasing the offense level for some acceptance of responsibility under U.S.S.G. § 3E1.1(a),(b), Defendant's total offense level was 30. [ECF No. 49, at 7]. Defendant has 20 criminal history points and has a criminal history category of VI.

14

18 U.S.C. § 924(a)(2) provides that there is a 10-year maximum sentence for unlawful possession of a firearm. However, the application of the Armed Career Criminal Act requires a minimum sentence of 15 years (or 180 months) and a maximum sentence of life in prison. 18 U.S.C. § 924(e)(1). Under the Guidelines, an Offense Level of 30 and a criminal history category of VI, the recommended imprisonment range is 168 to 210 months. However, because of the statutory minimum required by the Armed Career Criminal Act, the guideline range is adjusted upward to be 180 months to 210 months.

## II.   The Sentence

Prior to imposing a sentence, I received evidence and heard argument from the Government and the Defendant on both the § 3553(a) factors and the ultimate sentence. Defendant asked the court for a sentence at the bottom of the guideline range and asked me to consider Defendant's childhood where he was abused by his father and never had a stable home. Defendant also noted that much of his criminal history is related to drug addiction and asked that I consider that Defendant has admitted his guilt with regard to unlawfully possessing the firearm.

The Government called Mr. John James Perrine, chief of police in Marmet, West Virginia, to testify about his encounters with Defendant. Mr. Perrine described at length his first encounter with Defendant on February 8, 2018. Mr. Perrine described how officers attempted to approach Defendant's vehicle to question him about a missing person when Defendant sped off in his vehicle reaching speeds over 100 miles per hour before crashing into a ditch. Mr. Perrine then described how Defendant ignored law enforcement commands, fled on foot, and ultimately began to

15

pull a firearm from his waist before being tackled and tased by police officers and eventually subdued and taken into custody.[2]

Mr. Perrine then described his interactions with Defendant on February 10, 2018, that ultimately led to Defendant's conviction for attempted murder in West Virginia state court. After the incident on February 8, Defendant was taken to the hospital for treatment. Mr. Perrine was on hospital detail on February 10. Mr. Perrine described that minutes before Defendant was to be discharged and transferred to police custody, Defendant asked to go to the bathroom, and then fled through an adjoining patient's room. Mr. Perrine tracked him through the hospital, finally discovering his location in a hospital subbasement. Mr. Perrine coordinated with another officer for backup and the two planned to confront Defendant.

Mr. Perrine approached Defendant and attempted to pepper spray him. A struggle ensued and Defendant disarmed Mr. Perrine. Two shots were fired. Mr. Perrine lost consciousness briefly, and only learned later that Defendant had fired two shots at the officer backing him up. One of the shots hit the backup officer but was deflected and did not harm him.

After presenting the testimony of Mr. Perrine, the Government explained that it sought a top of the guidelines sentence because it believed that Defendant is a danger to others. The Government noted that this is Defendant's thirteenth felony conviction, and that Defendant has 25 prior misdemeanor convictions. The Government emphasized Defendant's violent behavior during both the February 8

---

2 Defendant disputes where the firearm was ultimately discovered. Defendant's argument is supported by another officer's police report, but it is undisputed that the firearm did belong to Defendant and that he possessed it during the chase.

16

and the February 10 incidents, and explained that it was possible that more than one law enforcement officer could have died that day.

Defendant addressed the court himself to provide context to the court, claiming that he never actually fired a weapon at the officer in the hospital.[3]  Defendant noted that he struggles with addiction and that he is not a violent person and asked that he receive a lower sentence because he did not try to hurt anyone.

I considered all of this testimony and argument, as well as the information in the presentence investigation report, and the § 3553(a) factors before ultimately concluding that Defendant should be imprisoned for a term of 210 months, the top of the guideline range, followed by a 5-year term of supervised release. I imposed this sentence because I believe that Defendant is the definition of a career criminal. To say that he has a troubling criminal history would be an understatement with 13 felony convictions and 25 misdemeanors. Defendant embodies every reason we have for prohibiting people convicted of felonies from possessing firearms. Violence against a police officer is a direct assault on the rule of law. There are no more dangerous offenses than those which threaten our law enforcement officers.

The law reasonably prohibits people convicted of felonies from having firearms because those people have proven that they are a danger to society and that when they get in trouble again, they pose a direct threat to law enforcement.

Defendant's past history and personal characteristics justify the sentence that I imposed. I cannot think of, nor have I ever seen, a more serious breach of the law

---

3 I note, however, that Defendant plead guilty to attempted murder for this charge.

by a felon possessing a firearm. Defendant had 12 other times to learn that he was not allowed to possess a firearm, but he was not deterred.

In addition to his sentence, I found that the Defendant was dangerous and recommended that he serve out his sentence at a maximum-security facility.

The court **DIRECTS** the Clerk to send a copy of this Order to the defendant and counsel, the United States Attorney, the United States Probation Office, and the United States Marshal.

ENTER:        February 2, 2021

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE

18